## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SAMANTHA VANDEGRIFT | : | Hon. Joseph H. Rodriguez |
| | : | |
| Plaintiff, | : | Civil Action No. 19-cv-11471 |
| | : | |
| v. | : | **OPINION** |
| | : | |
| BIC USA INC., BIC CORP. et al, | : | |
| | : | |
| | : | |
| Defendants. | : | |

This matter is before the Court on Defendants' Motion to Dismiss the Second Amended Complaint [Dkt. No. 24]. This product liability case was filed on March 15, 2019 in the Superior Court of New Jersey, Law Division, Civil Part, Burlington County and removed on April 26, 2019.

In general terms, Plaintiff Samantha Vandegrift ("Vandegrift" or "Plaintiff") claims she sustained injuries during the use of a lighter manufactured by Defendants BIC USA, Inc. and BIC Corp. ("BIC" or "Defendants"). Vandegrift alleges that when she was using the lighter to light a candle, she suddenly heard a pop and lighter fluid began to leak and caused second degree burns to her right hand, arm, and leg as well as her back and/or shoulder. In her original complaint, Vandegrift claimed that "the product was not reasonably safe for its intended purpose because of: (a) a manufacturing defect; or (b) a failure to adequately warn or instruct; or (c) a design defect."

On May 17, 2019, BIC filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Id.  Vandegrift amended the complaint on June 17, 2019.  Id.  On July 30, 2019, Defendants moved to dismiss the first amended complaint for failure to state a

claim pursuant to Fed. R. 12 (b)(6). Id.  On June 25, 2020, this Court denied BIC's motion as to the failure to warn claim but granted the motion as to Vandegrift's manufacturing and design defect claims under the New Jersey Products Liability Act ("PLA"), N.J. Stat. Ann. § 2A:58C-1. Vandegrift was given leave to amend and filed the Second Amended Complaint, the operative complaint at issue here, on July 23, 2020. The present motion to dismiss the manufacturing and design defect claims with prejudice followed.

The Court has considered the written submissions of the parties, pursuant to Fed. R. Civ. P. 78, and for the reasons stated below, the Court will deny Defendants' Motion to Dismiss as to both the design defect claim and the manufacturing defect claim.

## II.    Standard of Review

### A.  Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6).  The question before the Court is not whether the plaintiff will ultimately prevail.  Watson v. Abington Twp., 478 F.3d 144, 150 (2007).  Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607,

609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter

v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347,

351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal

conclusions' in a complaint when deciding a motion to dismiss.")).   Accord Iqbal, 556

U.S. at 678-80 (finding that pleadings that are no more than conclusions are not

entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's

obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels

and conclusions, and a formulaic recitation of a cause of action's elements will not do."

Twombly, 550 U.S. at 555 (internal citations omitted).  See also Iqbal, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice.").

B.  The New Jersey Products Liability Act, N.J.S.A. § 2A:58C–2., et seq.

To plead a prima facie cause of action under the PLA, a plaintiff must show that

the defendant manufactured the product, that a reasonably foreseeable user was

injured, that the product was defective, that the defect existed when it left the

defendant's control, and that the defect was the factual and proximate cause of the

plaintiff's injury. Myrlak v. Port Auth. Of N.Y. and N.J., 157 N.J. 84, 723 A.2d 45, 52

(N.J. 1999); Zaza v. Marquess & Nell, Inc., 144 N.J. 34, 675 A.2d 620, 627 (N.J.

1996); Jurado v. W. Gear Works, 131 N.J. 375, 619 A.2d 1312, 1317 (N.J. 1993).

The PLA provides:

A manufacturer or seller of a product shall be liable in a product liability
action only if the claimant proves by a preponderance of the evidence that
the product causing the harm was not reasonably fit, suitable or safe for its
intended purpose because it: a. deviated from the design specifications,

> formulae, or performance standards of the manufacturer or from
> otherwise identical units manufactured to the same manufacturing
> specifications or formulae, or b. failed to contain adequate warnings or
> instructions, or c. was designed in a defective manner.

N.J.S.A. § 2A:58C–2.  Three causes of action are established under the Act: claims for design defect, manufacturing defect, or warnings defect.  Roberts v. Rich Foods, Inc., 654 A.2d 1365, 1380 (N.J. 1995).  Only the manufacturing and design defect claims are at issue.

III.    Analysis

The Court refers to its previous Opinion in this matter and finds that the Plaintiffs' Second Amended Complaint cures the defects identified in the Court's Opinion, with the addition of several paragraphs and an appending of an export report.

1. Manufacturing Defect

The Court dismissed Vandegrift's manufacturing defect claim because the complaint alleged that the BIC lighter "deviated from defendants' own design specifications or performance standards." The pleading was conclusory and insufficient to state a claim under Iqbal, 129 S. Ct. 1937, 173 L. Ed. 2d 868.  The complaint also failed to meet Iqbal's plausibility standard because it lacked factual support to show how the lighter deviated from Defendants' "design specifications, formulae, or performance standards…or from otherwise identical units manufactured to the same manufacturing specifications or formulae." N.J. Stat. Ann. § 2A: 58C–2.  Vandegrift simply claimed that Defendants failed to "provide high quality, simple, inventive and reliable choices for everyone, everywhere, every time." [Dkt. No. 18-1 ¶ 14].  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).

4

To establish the presence of a manufacturing defect, a plaintiff is required to demonstrate, "in a general sense and as understood by a layman, that something was wrong with the product." Id. (citing Scanlon v. Gen'l Motors Corp., 65 N.J. 582, 326 A.2d 673, 677 (N.J. 1974) (internal quotation omitted)). In the Second Amended Complaint, Vandegrift adds several paragraphs and cites to her expert to satisfy the burdens of the PLA and Iqbal.  Compl. ¶¶ 34-41, 52-53, 109.

Specifically, Vandegrift highlights the following additional paragraphs as curative:

> 37. Section 8.10 of this standard addresses the structural integrity requirements of the internal pressure of these type of lighters to prevent rupture. Exhibit 4
> 38. The incident lighter also clearly failed to meet this requirement since the unit's reservoir ruptured as shown by the open crack in the side wall and allowed the pressurized internal flammable mixture to escape, which then ignited in the plaintiff's right hand and cause traumatic burn injuries. Exhibit 4
> 39. A reasonable safe design would be that the lighters manufactured by Bic Consumer Products fully satisfies and meets the requirements outlined by ASTM F400-10. This would eliminate the potential of a traumatic burnt injury when using the lighter if the reservoir ruptures under normal use and foreseeable applications and allows the flammable mixture to escape from the lighter. Exhibit 4
> 40. The incident lighter to rupturing and allowing the flammable mixture inside the reservoir to escape onto the plaintiff's right hand and sustaining a traumatic burn injury at an unexpected and undesirable time when used under a reasonable and foreseeable application, is unacceptable. This deficiency creates a serious injury potential and a substantial product hazard. Exhibit 4¶¶ 34–41.

The Court finds that the additional paragraphs cure the deficiencies at this stage and the motion will be denied as to the manufacturing defect claim. "The mere occurrence of an accident and the mere fact that" Plaintiff "was injured are not sufficient to demonstrate the existence of a defect." Myrlak, 157 N.J.at 98; Zaza, 675 A.2d at 627. Rather, the plaintiff must demonstrate that the product was defective because it "was

not reasonably fit, suitable or safe for its intended purpose." N.J. Stat. Ann. § 2A: 58C–2.  At this stage, however, a plaintiff is not required to prove a specific manufacturer's defect. "If the proofs permit an inference that the accident was caused by some defect, whether identifiable or not, a jury issue as to liability is presented." Moraca v. Ford Motor Co., 66 N.J. 454, 458, 332 A.2d 599, 601 (1975) (quoting Sabloff v. Yamaha Motor Co., Ltd., 59 N.J. 365, 283 A.2d 321 (1971)).

Under Moraca and its progeny, the inability to prove a defect by direct evidence is not always fatal to a plaintiff's case. "[A] plaintiff may prove a defect either by circumstantial evidence which would permit an inference that a dangerous and defective condition existed prior to sale, or by negating other causes in order to make it reasonable to infer that a dangerous condition existed while defendant had control of the product." Moraca, 66 N.J. at 458, 332 A. 2d at 601 (citing Scanlon v. General Motors Corp., 65 N.J. 582, 326 A.2d 673 (1974); see also, Suter v. San Angelo Foundry & Mach. Co., 81 N.J. 150, 170, 406 A.2d 140 (1979)

After a review of the Second Amended Complaint, Plaintiff has met her burden under Rule 12 (b)(6) and the manufacturing defect claim will be permitted to go forward.

2. Design Defect

Vandegrift's design defect also survives for similar reasons.  In design defect claims, ordinarily a product is regarded as defective if the risk of harm created by the product outweighs its usefulness. Indian Brand Farms, Inc., 617 F.3d 207, 225*;* Lewis v. Am. Cyanamid Co., 155 N.J. 544, 715 A.2d 967, 980 (N.J. 1998); Jurado, 619 A.2d at 1317.  First, the fact-finder must "determine whether the plaintiff used the product in an objectively foreseeable manner." Indian Brand Farms, Inc., 617 F.3d 207, 225.  Next, the

6

fact-finder must balance various factors relevant to the safety and utility of the product and determine where the product falls on the risk-utility continuum. O'Brien v. Muskin Corp., 94 N.J. 169, 463 A.2d 298, 304-05 (1983). The plaintiff thus bears a burden to demonstrate "under a risk-utility analysis the existence of an alternative design that is both practical and feasible." Id.

New Jersey courts use a seven-factor balancing test to determine whether a product is fit for its intended uses, considering:

> (1) the usefulness and desirability of the product; (2) the likelihood and seriousness of injury; (3) the availability of a substitute product; (4) the manufacturer's ability to eliminate the danger without impairing the product's utility; (5) the user's ability to avoid danger by due care; (6) the user's anticipated awareness of the danger considering general public knowledge or the obvious condition or the existence of suitable warnings or instructions; and (7) the feasibility of the manufacturer's spreading the loss by setting the price or carrying liability insurance.

McGarvey, 679 A.2d at 740 (citing Johansen v. Makita USA, Inc., 607 A.2d 637 (1992)). Truchan v. Nissan Motor Corp. In U.S.A., 316 N.J. Super. 554, 720 A.2d 981, 985 (N.J. Super. Ct. App. Div. 1998) (citing O'Brien). In most cases the analysis will turn on "whether the reasonably foreseeable risk of harm posed by the reasonably foreseeable use of the product could have been reduced or avoided by a reasonable alternative design." Indian Brand Farms, Inc., 617 F.3d 207, 227 (citing Lewis, 715 A.2d at 980). However, the PLA has drastically changed the method of analyzing design defects by converting some factors of the risk-utility analysis into absolute bars to liability. See Roberts v. Rich Foods, Inc., 139 N.J. 365, 654 A.2d 1365, 1371 (N.J. 1995). The PLA provides:

> In any product liability action against a manufacturer or seller for harm allegedly caused by a product that was designed in a defective manner, the manufacturer or seller shall not be liable if ... The characteristics of the product are known to the ordinary consumer or user, and the harm was

> caused by an unsafe aspect of the product that is an inherent characteristic
> of the product and that would be recognized by the ordinary person who
> uses or consumes the product with the ordinary knowledge common to the
> class of persons for whom the product is intended...

N.J. Stat. Ann. § 2A: 58C–3(a)(2). In the wake of the PLA, a plaintiff may not

avoid the obvious-danger/consumer-expectations aspect of the risk-utility.

Roberts, 654 A.2d at 1371 (noting that "a product that satisfies the 3a(2) standard

is, by statutory definition, not defectively designed"). Therefore, a plaintiff will

rarely be able to present a valid design defect cause of action without addressing

why the dangerous characteristics of the product would not be recognized by the

ordinary person who uses it.

   The Second Amended Complaint alleges that the lighter "failed to perform in

accordance with the consumer's/user's reasonable expectations" and therefore must be

defective because it leaked lighter fluid. Compl., ¶ 98, 100.  The Second Amended

Complaint further alleges that "the product was designed in a defective manner," "the

product was defectively designed because it did not employ a reasonable safer design,"

and that "the risks or dangers of the product as designed outweigh its usefulness and,

therefore, that a reasonably careful manufacturer or supplier would not have sold the

product at all in the form in which it was sold[.]"

   As to an alternative design, the Complaint states that "a proposed alternative

design...was practical and technically feasible...that would have prevented the harm

without substantially impairing the reasonably anticipated or intended function of the

product." Id. ¶ 109]. Vandegrift incorporates the following statements from her expert to

meet her burden:

> 109. The Plaintiffs expert made the following conclusions based
> upon his review. Exhibit 4

a. Samantha Vandergrift was using the incident lighter to ignite a candle in the bedroom of home. This was a reasonable and desired activity.

b. Samantha Vandergrift sustained a traumatic burn injury to her right hand when the structural integrity of the unit's reservoir was compromised and allowed the flammable mixture to escape from the unit at an unexpected and undesired time.

c. The incident lighter is clearly subject to the requirements outlined by ASTM F400-10 "Standard Consumer Safety Specifications for Lighters". The incident lighter failed to meet the requirements for lighters to ensure a reasonable degree of safety for normal use. It also failed to meet the requirements for structural integrity requirements to maintain the internal pressure without rupture. This deficiency creates a serious injury potential and a substantial product hazard.

d. Warning labeling and signs contained on products are intended to convey information related to hazards and provide information for the appropriate knowledge and motivation to avoid such hazards. The primary purpose of warnings is accident prevention and/or injury mitigation. The incident lighter was offered for sale devoid of any appropriate warning labeling. This deficiency, in turn, fails to warn the user of the dangers associated with operating the unit, or recommend the precautionary measures to take to during the normal operation and handling of the product to avoid potentially causing traumatic impact hand injuries.

e. Bic Consumer Products has offered for sale a defective assembly, whereby it fails to withstand reasonable and foreseeable use and has the potential to cause traumatic burn injuries. The firm failed to warn the user of the dangers associated with using the unit.

f. Bic Consumer Products is directly responsible for the injuries sustained by Samantha Vandergrift.

110. Plaintiff's claims of defective design include but are not necessarily limited to the fact that the product malfunctioned by causing lighter fluid to cover plaintiff's body and to ignite, causing burns to plaintiff's body.

111. A design defect is established by proof that the product did not safely perform the job or function for which it was made, contrary to the consumer's/user's reasonable expectations.

112. In proving a defect in the product's design, plaintiff need not prove that defendants knew that the accident in this case could happen as it did.

113. Instead, knowledge of the possibility of such an event is legally placed upon the manufacturer/seller.

114. Defendants knew or should have known that the accident could happen as it did but nevertheless were unreasonably careless in the manner in which defendants designed, marketed or sold the product.

Compl., ¶¶ 109-114.

Finally, Plaintiff appends the expert report to the Complaint for additional

support.  Expert Robert E. Moro opines:

> A reasonable safe design would be that the lighters manufactured by Bic Consumer Products fully satisfies and meets the requirements outlined by ASTM F400-10. This would eliminate the potential of a traumatic burnt injury when using the lighter if the reservoir ruptures under normal use and foreseeable applications and allows the flammable mixture to escape from the lighter.
> It is the writer's evaluation that the incident lighter to rupturing and allowing the flammable mixture inside the reservoir to escape onto the plaintiff's right hand and sustaining a traumatic burn injury at an unexpected and undesirable time when used under a reasonable and foreseeable application, is unacceptable. This deficiency creates a serious injury potential and a substantial product hazard.
> The Consumer Product Safety Act regulations at 16 C.F.R. Part 1115.4 (Ref. #8) defines a defect as any flaw or weakness in a product. It includes in that definition quality control defects, design defects, and inadequate warnings. The deficiency found in the incident lighter creates a serious injury potential and a substantial product hazard and clearly violates these regulations.

Report of Robert E. Moro, Compl., Ex. 4

When read together, the additional paragraphs to the Second Amended

Complaint coupled with the expert's statements and report give sufficient factual

support to Plaintiff's design defect claim and, at this stage, satisfies the PLA and passes

Iqbal's plausibility test. See Moraca, 66 N.J. at 458, 332 A. 2d at 601; Iqbal, 556 U.S.

662 at 678; See Twombly, 550 U.S. 544 at 555.

IV.   Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss [Dkt. No. 24] will be

denied as to both the manufacturing defect claim and the design defect claim.  An

appropriate Order shall issue.

Dated: March 31, 2021          s/ Joseph H. Rodriguez
                               Hon. Joseph H. Rodriguez,
                               UNITED STATES DISTRICT COURT